EROL YORULMAZOGLU, Plaintiff-Appellant, v. LAKE FOREST HOSPITAL, Defendant-Appellee.

First District (5th Division)   No. 1—04—2763

Opinion filed August 5, 2005.

Peter M. Kelly, of Evanston (Peter M. Kelly, of counsel), for appellant.

Sidley, Austin, Brown & Wood, L.L.P., of Chicago (Patrick S. Casey and Ami N. Wynne, of counsel), for appellee.

JUSTICE GALLAGHER delivered the opinion of the court:

Plaintiff, Erol Yorulmazoglu, appeals from the dismissal by the circuit court of Cook County, pursuant to section 2—619(a)(4) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(4) (West 2002)), of his petition seeking to vacate an arbitration award entered in a proceeding between plaintiff, two other claimants, and defendant, Lake Forest Hospital. We affirm.

## BACKGROUND

In August 1999, plaintiff, a physician, became an employee of defendant. Pursuant to a three-year employment agreement, plaintiff was employed as an oncologist in a division of the hospital named Deerpath Medical Associates. At the time, Deerpath Medical Associates (DMA) was staffed by approximately 32 physicians, all of whom had employment agreements with defendant. Pursuant to an arbitration clause in their employment agreements, plaintiff, along with fellow oncologists Rohit Shah (Shah) and Ira Piel (Piel) (collectively, the other two claimants), were claimants in an arbitration against defendant. The other two claimants initiated the arbitration on December 13, 2000. They also filed an action against defendant in the circuit court of Lake County (case No. 01 CH 14) (Lake County action). Plaintiff's attorney, who also represented the other two claimants, then requested that plaintiff be added to the arbitration. Defendant agreed, but requested that plaintiff also file a formal demand for arbitration. Plaintiff did so on March 15, 2001. Thereafter, plaintiff and the other two claimants pursued all of their claims together in the arbitration. The arbitration was pursued through the American Arbitration Association (AAA) as AAA case No. 51 160 00580 00.

In the arbitration, plaintiff and the other two claimants asserted breach of contract claims arising out of defendant's September 2000 unilateral decision to shut down DMA and its subsequent actions implementing that decision, which allegedly included offers of inducements and threats to other DMA physicians and the involuntary termination of those who did not cooperate. The arbitrator bifurcated the action into Phase I and Phase II.[1] Phase I was limited to: (a) whether defendant had the right to terminate the physicians' employ-

---

[1]As noted in the final award, testimony in Phase I was completed in seven days on January 11, 2001. Evidentiary hearings in Phase II commenced on September 4, 2002, and ended on February 27, 2003. Additional hearings

ment agreements without cause; and (b) whether defendant breached a duty it owed to the claimants not to engage in an effort to break up DMA or to encourage substantially all other DMA physicians to leave the group and to actually implement such breakup without the consent of these physicians. At the end of the first phase, in a preliminary award, the arbitrator ruled in favor of claimants. All of the Phase I findings were confirmed in the final award at the end of Phase II. The arbitrator's final award found that defendant had breached its contracts with plaintiff and the other two claimants and that plaintiff was wrongfully discharged. The arbitrator also found, however, that all of the claimants failed to prove: (1) their breach of contract claim regarding billing and collection; (2) their claim that any alleged damages or loss of income was a result of the breach of contract; and (3) numerous other claims. As a result of the pending arbitration and the arbitrator's findings: (1) the other two claimants retained the value of their employment despite defendant's efforts to terminate them prior to the expiration of their employment contracts; (2) plaintiff remained employed for a year beyond the time most similarly situated physicians in his medical group were terminated or induced to leave the group; and (3) defendant was required to pay monetary damages to plaintiff and Piel. With respect to Phase I, the arbitrator awarded reasonable attorney fees to all claimants. In addition, the arbitrator awarded attorney fees to plaintiff and one of the other claimants with respect to the individual claims on which they prevailed. With respect to the final award, the arbitrator determined that defendant was the prevailing party on most of the claims. Thus, the arbitrator awarded defendant its reasonable attorney fees, which were determined to be $424,185, with the net amount being $344,283.

On April 7, 2004, plaintiff timely filed a "Verified 710 ILCS Section 5/12 Petition to Vacate Certain Arbitration Awards" (Cook County action), seeking to vacate all attorney fee awards granted by the arbitrator to defendant (including those of the other two claimants), and to remand certain issues already decided by the arbitrator for reconsideration.[2] Neither of the other two claimants, however, filed a petition by the deadline for doing so. Instead, the other two claimants, who still had time remaining on their employment contracts with

---

were held on August 5 and 25, 2003 (the transcript of these proceedings contains approximately 4,700 pages). Numerous preliminary and case management hearings were held and participated in by attorneys on various dates.

[2]The petition was incorrectly filed in the law division of the circuit court of Cook County. Subsequently, an agreed order was entered transferring the case to the chancery division.

defendant, paid defendant the attorney fees allocable to them before February 8, 2004, which was the due date pursuant to the final arbitration award. Also, plaintiff's counsel, on behalf of the other two claimants, filed a motion to confirm the final arbitration award in the Lake County action. On April 22, 2004, the trial court in the Lake County action, pursuant to section 11 of the Uniform Arbitration Act (710 ILCS 5/11 (West 2002)), entered an order confirming the final arbitration award.

On June 22, 2004, defendant moved to dismiss plaintiff's petition in the Cook County action pursuant to sections 2—615 and 2—619 of the Code of Civil Procedure (735 ILCS 5/2—615, 2—619 (West 2002)). The basis for defendant's section 2—615 motion was that plaintiff failed to allege any of the statutory grounds for vacating an arbitration award under section 12 of the Uniform Arbitration Act (710 ILCS 5/12 (West 2002)). The basis for defendant's section 2—619 motion was that, pursuant to section 2—619(a)(4), the confirmation award entered in the Lake County action collaterally estopped plaintiff from seeking to vacate the final award. On August 19, 2004, the trial court in the Cook County action granted defendant's motion to dismiss pursuant to section 2—619(a)(4).

## STANDARD OF REVIEW

■ Our review of the trial court's order dismissing plaintiff's petition pursuant to section 2—619 is *de novo. Casanova v. City of Chicago*, 342 Ill. App. 3d 80, 87, 793 N.E.2d 907, 914 (2003). Pursuant to section 2—619(a)(4), where a plaintiff's claim is barred by a prior judgment, a defendant may seek an involuntary dismissal on a theory of collateral estoppel or *res judicata. Dick v. Peoples Mid-Illinois Corp.*, 242 Ill. App. 3d 297, 303, 609 N.E.2d 997, 1002 (1993). "For the doctrine of *res judicata* to apply, the following three requirements must be satisfied: (1) there was a final judgment on the merits rendered by a court of competent jurisdiction; (2) there is an identity of cause of action; and (3) there is an identity of parties or their privies." *Evans v. General Motors Corp.*, 314 Ill. App. 3d 609, 617, 732 N.E.2d 79, 86 (2000), citing *Downing v. Chicago Transit Authority*, 162 Ill. 2d 70, 73-74, 642 N.E.2d 456 (1994). "A party asserting collateral estoppel must show that (1) the issue previously adjudicated is identical to the question presented in the subsequent action; (2) a final judgment on the merits exists in the prior case; and (3) the party against whom estoppel is directed was a party to the prior litigation or is in privity with such a party." *Midland Hotel Corp. v. Director of Employment Security*, 282 Ill. App. 3d 312, 315-16, 668 N.E.2d 82, 86 (1996). Although there are distinctions between the doctrine of *res*

*judicata* and the doctrine of collateral estoppel (see, *e.g., LaSalle Bank National Ass'n v. Village of Bull Valley*, 355 Ill. App. 3d 629, 635-36, 826 N.E.2d 449, 455-56 (2005)), these distinctions are not at issue here.

What is relevant to the instant case is that both doctrines only apply to later actions between the same parties or their privies. *Board of Trustees of the Addison Fire Protection District No. 1 Pension Fund v. Stamp*, 241 Ill. App. 3d 873, 878, 608 N.E.2d 1274, 1280 (1993), citing *Simcox v. Simcox*, 131 Ill. 2d 491, 496-97, 546 N.E.2d 609 (1989). A nonparty may be bound under privity if his interests are so closely aligned to those of a party that the party is the virtual representative of the nonparty. *Purmal v. Robert N. Wadington & Associates*, 354 Ill. App. 3d 715, 723, 820 N.E.2d 86, 95 (2004). Defendant maintains that plaintiff was in privity with the other two claimants because plaintiff's claims in the arbitration were the same as the claims asserted by the other two claimants and because plaintiff availed himself of the Lake County action when that action was used to enforce a subpoena related to the arbitration. We agree with plaintiff that merely because persons are once in privity does not necessarily mean that they are always in privity. The relevant time for determining whether privity existed was April 22, 2004, when the order confirming the arbitration award was entered in the Lake County action. At that time, plaintiff argues, he was no longer in privity with the other two claimants because their interests diverged once plaintiff filed his petition to vacate the arbitration award on April 7, 2004.

The term "privity" is not a precise one. *Diversified Financial Systems, Inc. v. Boyd*, 286 Ill. App. 3d 911, 916, 678 N.E.2d 308, 311 (1997); accord *Purmal*, 354 Ill. App. 3d at 722, 820 N.E.2d at 94 ("With respect to the doctrine of *res judicata*, there is no generally prevailing definition of 'privity' which can automatically be applied to all cases; that determination requires a careful examination into the circumstances of each case"). Certain authorities, including the Restatement (Second) of Judgments (1982), no longer use the term "privity." *People ex rel. Burris v. Progressive Land Developers, Inc.*, 151 Ill. 2d 285, 296, 602 N.E.2d 820, 826 (1992); *Diversified Financial*, 286 Ill. App. 3d at 916, 678 N.E.2d at 311. Under Illinois law, "[p]rivity is said to exist between ' "parties who *adequately represent the same legal interests*." ' [Citation.]" (Emphasis added.) *Burris*, 151 Ill. 2d at 296, 602 N.E.2d at 826; accord *Bagnola v. SmithKline Beecham Clinical Laboratories*, 333 Ill. App. 3d 711, 718, 776 N.E.2d 730, 736 (2002); *Financial*, 286 Ill. App. 3d at 916, 678 N.E.2d at 311. Thus, the relevant inquiry here is whether plaintiff's interests were adequately represented in the Lake County action.

At the time the order was entered in the Lake County action, the other two claimants and defendant had made all of their required cash payments. At the time that the other two claimants sought the confirmation order, they had already paid their share of the attorney fee award and had passed up the deadline for filing a petition to vacate the award. At the time the Lake County court entered its order, the employment agreements between defendant and the other two claimants were still in effect. Although plaintiff asserts that the only aspect of the award that could benefit from confirmation was the finding that the other two claimants had not breached their employment agreements and that defendant had breached those agreements, nonetheless, the entire award was confirmed with respect to the other two claimants. Thus, plaintiff's contention that the attorney fee issue was not "at stake" is inaccurate.[3] However, it can be said that plaintiff's interests, including the attorney fee payment *as it affects plaintiff*, were not adequately represented.

As this court has explained:

> "The policy concern here is to avoid a situation where everyone engages in litigation with the expectation that the matter will be finally resolved, but then when the judgment is entered, the loser argues that he is not bound by it, or his opponent is not entitled to its benefits, because he or the opponent was not a party or privy. '[T]he party opposing the representative is entitled to assume that the representative participates in a way that will bind those whom he represents unless the circumstances warn the opposing party that there is doubt about the matter.' Restatement (Second) of Judgments § 42, Comment *a*, at 406 (1982). The question is whether there was justifiable reliance on the part of the opposing party." *Diversified Financial Systems, Inc. v. Boyd*, 286 Ill. App. 3d 911, 916, 678 N.E.2d 308, 311 (1997).

Here, defendant was aware of plaintiff's pending petition to vacate the award in the Cook County action. While it may have served the interests of judicial economy for plaintiff to have been joined or added as an indispensable or necessary party in the Lake County action, that did not occur. See, *e.g.*, *In re Marriage of Johnson*, 97 Ill. App. 3d 634, 636, 423 N.E.2d 264, 265 (1981) ("Whenever a party has been omitted whose presence is so indispensable to a decision upon the merits that

---

[3]We agree, at least in some respects, with defendant's statement that plaintiff seeks to "have his cake and eat it too." As defendant correctly notes, plaintiff has not challenged the facial validity of the confirmation order, but instead contests its applicability to him. Thus, so long as plaintiff is not challenging the validity of the Lake County order, plaintiff's prayer for relief must be limited to relief for himself only and not *all* claimants.

an order cannot be made without materially affecting his interests, the court should not proceed to a decision on the merits"); *Schnuck Markets, Inc. v. Soffer*, 213 Ill. App. 3d 957, 982, 572 N.E.2d 1169, 1187 (1991) ("The rule is well established that all persons who are indispensable parties to an action must be joined or an order entered without jurisdiction over an indispensable party is null and void").[4] Apparently, section 2—619(a)(3) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(3) (West 2004)) was also not raised at any point in either proceeding. Nonetheless, it can be said that while defendant may have justifiably relied on the fact that the other claimants would be bound by the entire award and that defendant is entitled to the benefits of that confirmation, it cannot be said that there was any justifiable reliance with respect to portions of the final award that affect plaintiff's interests alone. Plaintiff was not a named party in the Lake County action and defendant has failed to establish that plaintiff was in privity with the other two claimants in the Lake County action.

Defendant has raised another argument, however, as to why plaintiff's interests were adequately represented; namely, that the same attorney who represented plaintiff in the Cook County action represented the other two claimants in the Lake County action. Plaintiff responds to defendant's argument as follows: "in concluding privity was lacking, [the Seventh Circuit in *Tice v. American Airlines, Inc.*, 162 F.3d 966, 973 (7th Cir. 1998),] was not persuaded that the fact the parties were represented by the same counsel had any significance." In *Tice*, several airline pilots retained the same counsel for their age discrimination action as the one who had been retained by different pilots in a prior action essentially challenging the same policy. The court stated that this was not an improper practice that would support finding the action of those pilots was barred under the doctrine of claim preclusion. In the instant case, without condoning the methods that plaintiff's attorney selected in maintaining two separate actions on behalf of different clients, one of whom wanted to vacate the award, while the other two wanted to confirm the award,

---

[4]We note that "[t]he rule requiring joinder of indispensable parties is not applied when a party, though not before the court in person, is so represented by others that his interest receives actual and efficient protection. [Citations.] This so-called 'doctrine of representation' applies where persons are before the court who have the same interests, and will be equally certain to bring them forward and protect them, as those of persons not before the court. [Citation.]" *Moore v. McDaniel*, 48 Ill. App. 3d 152, 158, 362 N.E.2d 382, 387 (1977). We do not believe that the two claimants in the Lake County action who sought to *confirm* the award had the same interests as plaintiff, who is seeking to *vacate* the award.

we do not believe that this fact alone means that privity existed between plaintiff and the other two claimants, such that plaintiff should be prevented from having his day in court.

Our independent research has disclosed additional case law in Illinois, as well as from other jurisdictions, that has addressed the issue of whether employment of the same counsel by two parties establishes privity. In some of those cases, privity was not established from the mere fact of employment of the same counsel, while it has also been indicated that the appearance of the same attorney in both actions bolsters a finding of privity. See 47 Am. Jur. 2d *Judgments* § 663 (1995).

In one Illinois case, *Earl v. Thompson*, 128 Ill. App. 2d 32, 262 N.E.2d 320 (1970), the court decided that the mere fact that the same attorney represented both the insured in a personal injury action and later represented the insurer in the personal injury plaintiff's subsequent garnishment action did not make the personal injury action *res judicata* as to the garnishment proceeding because the issue of insurance coverage was not before the court in the personal injury action and the insurer defended under a reservation of rights; thus, there was no privity between the insured in the personal injury action and the insurer in the garnishment proceeding. There are several other cases from other jurisdictions that have concluded that the mere fact of employment of the same attorney by the two parties does not establish privity. See, *e.g.*, *Texas Capital Securities Management, Inc. v. Sandefer*, 80 S.W.3d 260, 267 (Tex. App. 2002) (the mere fact that brokerage firm's officers and management company, which were being sued by investors, enlisted the services of the same attorney who defended the firm in prior suit did not prove privity); *Steiner v. E.J. Bartells Co.*, 170 Or. App. 759, 763, 13 P.3d 1050, 1052 (2000) (an attorney is not a party and does not control a legal action for purposes of finding privity); *Benson & Ford, Inc. v. Wanda Petroleum Co.* 833 F.2d 1172, 1175 (5th Cir. 1987) ("A plaintiff cannot be precluded from bringing his own suit because he chose an attorney who participated in a prior suit"); *Rynearson v. Firestone Tire & Rubber Co.*, 43 Or. App. 943, 946, 607 P.2d 738, 739 (1979) (concluding that, although the plaintiff was a witness in the prior litigation, he had not and could not have controlled the prior litigation, and therefore, he was neither a party nor in privity with a party in the prior case, *even where his attorney conducted the other suit* because "the attorney did so in his capacity 'as attorney for the plaintiff therein,' not as attorney for this plaintiff"); accord *Baxter v. Utah Department of Transportation*, 705 P.2d 1167, 1169 (Utah 1985).

An Illinois case in which the existence of privity was bolstered by the fact that the parties in both actions were represented by the same

counsel is *Johnson v. Nationwide Business Forms, Inc.*, 103 Ill. App. 3d 631, 431 N.E.2d 1096 (1981), which involved two different creditors filing actions against a corporation alleging it was fraudulently dissolved. In *Johnson*, however, privity existed primarily because the two creditors had an identity of interest and their actions (one in state court; the other in federal court) were identical. In the instant case, although plaintiff was represented by the same counsel as the other two claimants, as explained earlier, his interests were not closely aligned with them because he was seeking to vacate the same award that they sought to confirm.

■ Both collateral estoppel and *res judicata* are equitable doctrines; thus, even if the threshold requirements are met, the doctrines should only be applied as fairness and justice require. See, *e.g.*, *LaSalle Bank National Ass'n v. Village of Bull Valley*, 355 Ill. App. 3d 629, 636, 826 N.E.2d 449, 456 (2005) ("collateral estoppel is an equitable doctrine, so that, even where the threshold elements of the doctrine are satisfied, it will not be applied if an injustice would result"); *In re J'America B.*, 346 Ill. App. 3d 1034, 1042, 806 N.E.2d 292, 300 (2004) ("*Res judicata* should be applied only as fairness and justice require, and only to facts and conditions as they existed at the time judgment was entered"). "Courts must balance the need to limit litigation against the right to a fair adversarial proceeding in which a party may fully present its case." *LaSalle Bank National Ass'n*, 355 Ill. App. 3d at 643, 826 N.E.2d at 462. Because plaintiff was not afforded an opportunity to present his position in the Lake County action, we conclude that fairness and justice require that we not apply collateral estoppel here. We further conclude that the mere fact that plaintiff employed the same counsel as the other two claimants in the Lake County action does not establish privity and should not deprive plaintiff of his day in court, particularly where defendant was aware of plaintiff's Cook County action. With the exception of the very zealous representation by its counsel in attempting to have the Cook County action dismissed, it cannot be said that defendant could have been reasonably justified in believing that the Lake County judgment would bind plaintiff. Thus, we hold that plaintiff's petition should not have been dismissed pursuant to section 2—619(4) of the Code of Civil Procedure.

■ We now address defendant's next argument, namely, that this court has the authority to dismiss plaintiff's petition pursuant to section 2—615 of the Code of Civil Procedure, even if that was not the ground relied upon by the trial court. We agree. Supreme Court Rule 366 provides, in pertinent part, that "[i]n all appeals the reviewing court may, in its discretion, and on such terms as it deems just, ***

enter any judgment and make any order that ought to have been given or made, and make any other and further orders and grant any relief *** that the case may require." 155 Ill. 2d R. 366(a)(5).

■ "It is well settled that a court's review of an arbitrator's award is extremely limited [citation], in fact, more limited than appellate review of a trial court's decision." *Herricane Graphics, Inc. v. Blinderman Construction Co.*, 354 Ill. App. 3d 151, 155, 820 N.E.2d 619, 623 (2004). "Courts must construe arbitration awards, whenever possible, to uphold their validity." *Perkins Restaurants Operating Co. v. Van Den Bergh Foods Co.*, 276 Ill. App. 3d 305, 309, 657 N.E.2d 1085, 1087 (1995). Thus, a court will grant a petition to vacate an arbitration award only in extraordinary circumstances. *Canteen Corp. v. Former Foods, Inc.*, 238 Ill. App. 3d 167, 178, 606 N.E.2d 174, 181 (1992). The rationale for this is that "[t]he purpose of arbitration is to foster the final disposition of disputes in an easier, quicker, and more economical manner than by litigation." *Kalish v. Illinois Education Ass'n*, 166 Ill. App. 3d 406, 410, 519 N.E.2d 1031, 1033 (1988). When parties agree to submit a dispute to arbitration for a binding and nonappealable decision, they bargain for finality. *Kalish*, 166 Ill. App. 3d at 410, 519 N.E.2d at 1033. "Limited judicial review fosters the long-accepted and encouraged principle that an arbitration award should be the end, not the beginning of litigation." *Perkins Restaurants*, 276 Ill. App. 3d at 309, 657 N.E.2d at 1087.

■ Under section 12(a) of the Uniform Arbitration Act (710 ILCS 5/12(a) (West 2004)) (the Act), a court can vacate an arbitration award under the following circumstances:

"(1) The award was procured by corruption, fraud or other undue means;

(2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any one of the arbitrators or misconduct prejudicing the rights of any party;

(3) The arbitrators exceeded their powers;

(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of Section 5 [of the Act], as to prejudice substantially the rights of a party; or

(5) There was no arbitration agreement ***." 710 ILCS 5/12(a) (West 2004).

As defendant correctly notes, plaintiff failed to allege any facts in his petition to vacate the award that would support any of these five prongs. Instead, plaintiff argues that the arbitration award can be vacated because of "gross errors" with respect to the arbitrator's attorney fee award.

As this court has explained:

> "Although a court cannot vacate an award due to errors in judgment or mistakes of fact or law, a court can vacate an arbitration award where a gross error of law or fact appears on the award's face or where the award fails to dispose of all matters properly submitted to the arbitrator. [Citation.] To vacate an award based on a gross error of law, a reviewing court must be able to conclude, from the award's face, that the arbitrator was so mistaken as to the law that, if apprised of the mistake, he would have ruled differently. [Citation.] The burden is placed on the challenger to prove by clear and convincing evidence that an award was improper. [Citation.]" *Herricane Graphics*, 354 Ill. App. 3d at 156, 820 N.E.2d at 624.

See also *Board of Education of the City of Chicago v. Chicago Teachers Union, Local No. 1*, 86 Ill. 2d 469, 427 N.E.2d 1199 (1981). Plaintiff has not met this burden.

■ In awarding attorney fees, the arbitrator made a specific finding that defendant "was the prevailing party with respect to this Final Award on most of the claims and a party need not prevail on all of its claims to be the prevailing party." Moreover, the arbitrator provided the reasoning behind the attorney fee awards. As the final award states: "In determining the reasonableness of attorneys' fees it is appropriate to consider all of the skills and standing of the attorney employed, the nature of the case and the difficulties involved." The arbitrator also explained that, in determining the reasonableness of the fees awarded to claimants in Phase I, "it [was] appropriate to review the 'lengthy manner' in which the Claimants presented the case." As the arbitrator explained: "The length of time in presenting its claims in part results from confusion and redundant testimony. The length of time reflected by [defendant] reflects the need for more than one lawyer present during the hearings given the number of exhibits and testimony of the Claimants' witnesses." Finally, the arbitrator explained his decision as follows:

> "In determining the reasonableness of attorneys' fees, it is appropriate to consider whether an inordinate amount of time has been spent on 'extraneous issues,' 'irrelevant exhibits,' [and] whether 'special circumstances' existed [sic] under Illinois law justified, denied or limited attorneys' fees. Spending more time litigating a dispute than is justified should be considered in determining the reasonableness of the attorneys' fees. The record reflects that the manner in which the case was tried was noted during the hearings."

We conclude that the award's face does not reveal any gross error.

For the foregoing reasons, pursuant to section 2—615 of the Code

of Civil Procedure (735 ILCS 5/2—615 (West 2004)), we affirm the order of the circuit court of Cook County dismissing plaintiff's verified petition to vacate certain arbitration awards. We affirm the confirmation of the final award with respect to plaintiff. Plaintiff shall pay, within 30 days after the date of this opinion, all amounts owed by plaintiff to defendant, plus interest pursuant to section 2—1303 of the Code of Civil Procedure (735 ILCS 5/2—1303 (West 2004)).

Affirmed.

O'BRIEN and NEVILLE, JJ., concur.